IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

ADALBERTO CARRASQUILLO-CARMONA,

Defendant.

CRIMINAL NO. 05- 425 (JAG)

## REPORT AND RECOMMENDATION

### INTRODUCTION

Defendant Adalberto Carrasquillo-Carmona ("Carrasquillo") filed a Motion to Suppress Statements, which was referred by the Court to the undersigned Magistrate Judge, claiming that his post-arrest statements were involuntary, without a knowing and intelligent waiver of his constitutional rights.  Moreover, the defense claims the government agents did not honor defendant's request for counsel.  As such, the statements should be suppressed.  The government filed its reply in opposition claiming defendant initiated conversation with the agents, indicating his willingness and desire to discuss the circumstances of the offense and also that defendant knowingly and intelligently waived his Fifth Amendment rights by signing the waiver form.  (**Docket Nos**. **28, 31 and 34**).

On November 2, 2006, an evidentiary hearing was held wherein the testimonies of Special Agent Miguel Torres ("SA Torres") of the Federal Bureau of Investigations ("FBI") and defendant Carrasquillo were presented.  On November 17, 2006, the government filed the

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 2

translations of the documents presented at the evidentiary hearing. (Docket No. 44). A transcript of the evidentiary hearing was requested and filed on December 1, 2006. Accordingly, the matter is deemed submitted on that date.

## FACTUAL BACKGROUND

**Testimony of SA Torres:**

The government presented the testimony of SA Torres which may be summarized as follows:

SA Torres has been a Special Agent with the FBI for one (1) year and four (4) months. On November 21, 2005, SA Torres responded when Justo Pérez-García, a victim of a carjacking, came to the FBI office in San Juan and filed a formal complaint about a carjacking. The victim was interviewed and the investigation of the carjacking started. SA Torres spoke to Carolina Police Officer Eric Estrada ("PRPO Estrada") in relation to the case.

On November 23, 2005, PRPO Estrada called SA Torres and indicated to him that a subject, later identified as defendant Carrasquillo, was arrested. SA Torres, along with a fellow SA Paul Wright ("SA Wright"), went to the Carolina PRPD Headquarters in an attempt to interview defendant Carrasquillo. Once the agents arrived, they advised defendant of his Miranda rights and he invoked his right to an attorney. The agents left without interviewing defendant.

Exhibit 1 are two photographs taken on November 21, 2005 of the victim's injuries as a result of the carjacking. One photograph is of the victim's head showing 96 stitches. The

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 3

other one shows the victim's hands with some bruises obtained while the victim was trying to defend himself.

Exhibit 2 is a true and exact photocopy of the FBI FD-395.15 form which is the Spanish version notification of rights which was read to defendant and is signed by SAs Wright and Torres on November 23, 2005 with a hand written note on the bottom stating "Adalberto Carrasquillo-Carmona invoked his right to have an attorney present before answering any questions."

Exhibit 3 are four (4) photographs taken by PRPO Estrada of the carjacked Jeep Cherokee vehicle when it was recovered on the evening of November 13, 2005.

After the federal agents left the Carolina PRPD Headquarters, they continued working on the case with the Assistant United States Attorney in charge. A complaint was filed with the corresponding affidavit. An arrest warrant was also issued.

Defendant was eventually arrested by state police officers and transported to a local prison. On December 1, 2005, the federal arrest warrant was executed and defendant's custody was transferred to the FBI. SA Torres and SA Ed Cabral ("SA Cabral") performed defendant's arrest and transfer to the FBI for processing. Defendant was handcuffed and transported in an FBI vehicle to the FBI office at the Federal Building from the Bayamón state jail. During the car trip to the FBI Office, defendant asked the agents what was going on. The agents explained to defendant that he was going to be taken to the FBI office in San Juan for processing, including the reading of rights and fingerprinting. Defendant apologized to SA Torres two (2) or three

(3) times and expressed regret for not speaking to the agents previously and stated he wanted to talk to them about what happened.  SA Torres advised defendant to remain silent until they arrived at the FBI office where he would have an opportunity to talk to them.  Upon arriving at the FBI office after a fifteen (15) minutes ride, defendant was read his constitutional rights in Spanish by SA Cabral who made sure defendant understood his rights and initialed each paragraph of the advise and waiver of rights form.  Defendant signed the waiver of rights form and advised he wanted to talk to the agents.  Then, defendant's interview was held in the presence of SAs Torres and Cabral.

Exhibit 4 is a true and exact photocopy of the Spanish version notification of rights signed by both agents and defendant Carrasquillo on December 1, 2005 at the FBI office.

After defendant signed Exhibit 4, defendant told the agents the events of November 13, 2005. Defendant indicated he had been drinking vodka with the victim. The victim agreed to give him (defendant) a ride but told him that he (victim) had to stop at the business of his (victim's) son. They stopped there and continued drinking alcohol.  When they arrived at defendant's neighborhood in Caruso Philippines, defendant hit the victim with his elbow and continued beating him trying to get him out of the vehicle.  While providing his statement, defendant cried and indicated he lost control.  Defendant said he exited the vehicle, pulled the victim out and drove away. SA Torres confronted defendant with the victim's photographs and told defendant the injuries of the victim were not consistent with being hit with the elbow. Defendant continued to cry and said he felt remorse because he knew the victim.  Defendant

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 5

then said that he did elbow the victim, he (defendant) exited the vehicle, walked back around, opened the door and used a lug nut wrench to force the victim out of the car and he slammed the victim's head into the car door frame. By then the victim was outside the vehicle, defendant jumped into the vehicle and fled. Defendant then wrecked the victim's car a short distance away against an old church known as "La Roga." Then, defendant continued to a bar and met "Papolo" and Pedro Nieves. Defendant told these two (2) individuals about the carjacking and these two (2) persons requested the keys to the vehicle because otherwise, they would kill defendant. Defendant handed them the keys of the victim's vehicle and they left in the vehicle.

Defendant was not under the influence of any drugs or alcohol while he was interviewed. Once defendant was read his rights he was eager to speak to the agents. Since the beginning, defendant started talking right away of the incident. Defendant was offered water and bathroom breaks during the interview. No promises or threats were made by the agents to defendant during the interview.

Besides signing the advise and waiver of rights, defendant wrote a statement of the incident of November 13, 2005, to wit, a written confession regarding the commission of the offense. Exhibit 5 is a true and exact photocopy of defendant's hand written statement dated December 1, 2005 and signed by SAs Cabral and Torres.[1]

---

[1] The English translation of defendant's written statement was put on the record at pp. 65-66 of the suppression hearing transcript.

Defendant was familiar with police procedures because he had a prior criminal record. Exhibit 6 is defendant's local prior criminal history which shows defendant has been arrested on three (3) prior occasions by state police.

On cross-examination, SA Torres indicated that, after the victim visited the FBI office, he (SA Torres) only contacted PRPO Estrada and he did not speak to any other witnesses. PRPO Estrada was interviewed but no report was made. SA Torres stated he did not visit the scene, nor Barrio Carruzo or Sector Philippines ("Barrio Filipinas"). No tests of the vehicle were performed by the FBI. The tire iron and the lug nut wrench were not found.

On November 23, 2005, the PRPD called the FBI to inform of defendant's arrest. The PRPD arrested defendant on its own volition. The FBI did not ask the state police to arrest defendant.

On November 23, 2005, SA Torres went to the Carolina Municipal Station with SA Paul Wright. Defendant was in a room and he was not free to leave. SAs Wright and Torres introduced themselves, presented their credentials and read defendant his rights in Spanish by way of Form FD-395.15, which is common practice. Defendant indicated he understood his rights and requested an attorney. SA Torres talked to defendant in Spanish and the whole process lasted about three (3) minutes. SA Wright read the rights to defendant. Once defendant requested an attorney, the interview concluded. Defendant was not released and he was returned to the Bayamón local prison.

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 7

Between November 23 and December 1, 2005, SA Torres did not visit the scene but he spoke to PRPO Estrada, drafted the federal complaint and arrest warrant.  Defendant never explained to SA Torres at what time he picked up the lug nut wrench,  A forensic exam was performed on the vehicle but PRPO Estrada advised SA Torres that no finger prints were found.

On December 1, 2005, defendant was arrested pursuant to the federal complaint. Defendant was placed on an FBI Mitsubishi Montero with tinted glasses.  SA Cabral drove the Montero, SA Torres sat in the back seat behind the driver, defendant was handcuffed and sat next to SA Torres.  Defendant was advised he was under arrest. The trip lasted about fifteen (15) minutes. SA Torres did not engage in conversation with defendant and he did not speak of the case with defendant.  Defendant asked what was the process and SA Torres only explained to defendant the process that he was going to be taken to the FBI for processing including the taking of finger prints and photographs.  Defendant apologized for not talking to the agents previously.  SA Torres told him to remain silent and informed him he would have an opportunity to talk to the agents at the FBI office.

On December 1, 2005, defendant did not request an attorney while he was transported to the federal building.  Defendant simply asked about the process and later proceeded to apologize for not talking earlier.  SA Torres did not recall mentioning to defendant the penalties involved and whether SA Cabral explained to defendant the charge that was the reason for the process.  While being transported to the FBI office, defendant was told by both SAs  Torres and

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 8

SA Cabral to remain silent and that he would have an opportunity to talk once they arrived to the FBI office.

Upon arrival at the FBI office, defendant was not asked any other questions regarding the case. Defendant was finger printed, photographed and read his Miranda warnings. After defendant was read his rights, the interview started. Defendant was taken to the sixth floor while handcuffed to a room with windows where his handcuffs from one hand were removed and his hand was attached to a rail. Defendant was not free to leave the room. Defendant was sitting down in the presence of SA Torres and SA Cabral, who had previously surrendered his weapon. SA Torres stepped out of the room for five (5) minutes to surrender his weapon while SA Cabral remained in the room. Therefore, SA Torres has no knowledge as to what happened while he was not in the room. SA Cabral asked defendant to write a statement of the incident.

While defendant was being interviewed, neither SA Torres nor SA Cabral, said anything to defendant to discourage him from invoking his right to counsel. SA Cabral asked defendant to write a statement. Defendant was not told by the agents to write down that he took the vehicle. No particular coaching was provided to defendant while he was writing his statement.

On re-direct, SA Torres stated defendant brought up the issue of the lug nut wrench. The victim never mentioned he was hit with an object.

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 9

On re-cross, SA Torres stated he and SA Cabral spoke to defendant in Spanish.[2]

**Testimony of defendant Carrasquillo:**

The defense presented the testimony of defendant Carrasquillo which may be summarized as follows[3]:

Defendant is twenty six (26) years old and has a ninth grade education. On November 23, 2005, defendant was coming back from a housing for males in San Juan. On the way to his house and when he stepped out from his grandfather's truck, a patrol car arrived with three (3) state agents. The state agents arrested him and took him to the CIC in Carolina. The state agents told defendant, while on the way, that he was being arrested for a carjacking. Upon arrival at Carolina, defendant was asked his name and address in order to complete the arrest warrant. Around 6:00 to 7:00 PM, two (2) FBI agents arrived and told him they wanted to talk to him about a carjacking. The FBI agents wanted to interview defendant but he refused because he did not have an attorney. About two (2) minutes passed between the time the FBI agents arrived and defendant requested an attorney. After defendant requested an attorney, the FBI agents left and defendant stayed with the local police officers who took him to Hato Rey for processing and then to the Bayamón 705 Institution where he remained from November 23 to December 1, 2005. No one asked him anything during this time.

---

[2] The government did not call SA Cabral as a witness because it would be cumulative testimony.

[3] Angel Luis Carrasquillo, defendant's grandfather, was present at the suppression hearing as a possible witness. Nonetheless, the defense decided not to present him as a witness in defendant's behalf.

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 10

On December 1, 2005, the FBI agents arrived to his cell at the Bayamón 705 Institution, gave him street clothes to change, placed him under arrest and took him into a grey Mitsubishi Montero with dark windows.  Defendant asked where they were taking him and he was told he was being taken to the federal court for processing.  There were three (3) FBI cars and six (6) agents total.  Two (2) of the agents transported him, including SA Torres and a dark skinned agent later identified by defendant in open court as SA Cabral.  Before going into the vehicle, the agents did not speak to defendant.  Once on the way to the federal courthouse, the agents told defendant they were going to interview him.  Defendant asked what was the procedure to which SA Cabral said it was a long procedure which could entail thirty (30) years in prison; they could take his family to prison and he could be taken away from Puerto Rico to a jail outside the island.  The agents told defendant that, since this case was at the federal level, it was different from a local case and could take longer.  Defendant asked for an attorney while being transported to the federal building and SA Torres told SA Cabral and SA Cabral told defendant that, because of the time of the day, there was no chance to get an attorney for him.  Defendant indicated he needed his pills for depression.  Defendant does not recall the exact time but he recalls it was daytime after lunch.  Defendant indicated he was stressed and under pressure.  Defendant testified the agents kept talking to him about the case after he requested an attorney.  The agents asked him to write a written statement and he was finger printed.  Upon arrival at the federal building, defendant did not request anything because he was told it was too late.

Defendant admitted he told the agents he felt guilty and asked the agents for forgiveness. Defendant was nervous, apologized to the agents and expressed remorse.

On cross-examination, defendant re-instated his testimony that he was told by SA Cabral he could face thirty (30) years in prison for this case and his family could go to prison as well. Defendant testified he believed SA Cabral because this was his first case at federal level. Defendant admitted having been arrested on four (4) occasions at state level before being arrested by the FBI.  Defendant was arrested once for narcotics and he was imprisoned. Defendant was also arrested for robbery at state level but the charges were dropped because the victim failed to identify him.  Defendant was arrested by the local police for this case. Defendant was also arrested for breaking and entering into a house.

Defendant indicated he told the agents, while being transported in the Mitsubishi Montero, that he wanted an attorney.  Defendant felt nervous and he was taking several medications at the time. to wit, Prozac, Doxepine and Clonopine.  No one threatened defendant at the FBI and he did not complain to the United States Magistrate Judge at the initial appearance of the lack of being provided an attorney.

Defendant testified he can read and write.  Defendant was shown Exhibit 4 and he admitted having been shown the document on December 1, 2005, placing his initials besides each paragraph and signing the form.  Defendant stated he was handed the form in Spanish but no one read the document to him.  Defendant signed the form without reading the same. No one told defendant what the document was and that it was necessary to go through the

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 12

document before he told anything to the agents.  SA Torres always spoke in English but the other agent (SA Cabral) spoke to him in Spanish.

Defendant testified he was told by the agents to put in writing what had happened. Defendant was shown Exhibit 5 which is his written statement.  Defendant indicated there are some things contained in the statement which are not true.  Defendant admitted he lied on the statement to get out of the problem.  Defendant indicated that it was not true that he took the vehicle from the victim and that he took out the victim by using a lug nut wrench.  Defendant explained he did not hit the victim with an object.  Defendant denied stealing the vehicle.

Defendant was shown Exhibit 1 and he denied putting the victim in that physical state.

On re-direct examination, defendant testified he pushed the victim when they passed by his (defendant's) house.  Defendant denied hitting the victim with an object and stated he did not take the car.  Defendant testified he included the false information in the statement because he was nervous and he did not know what to do.   SA Cabral told defendant to mention the alleged object in the statement to get out of problem.  Defendant denied once again taking the vehicle.

Upon questions by the undersigned, defendant indicated that Exhibit 2 was not shown to him and that he saw it after seeing the legal documents that he has.  Thus, defendant testified that on November 23, 2005 he was not given Exhibit 2 to sign and read.  Defendant stated he did request an attorney before answering any questions as indicated in Exhibit 2.  Defendant explained that, even though he does not recall whether the agents advised him of his rights, he

knew that he had the right to request an attorney because of the other cases he had at the state

level where you always have your attorney present.

## LEGAL DISCUSSION

Defendant Carrasquillo's arrest was made pursuant to an arrest warrant issued by this

Court which has not been challenged in any way by the defense. Thus, for purposes of the

suppression issue, defendant's arrest was based on trustworthy information that he had

committed or was committing an offense. It is now appropriate to discuss the voluntariness

aspect of defendant's post-arrest statements made during custodial interrogation, which he now

seeks to suppress.

When a defendant is considered to be under custody, in determining if a defendant's

statements to law enforcement officers is admissible in evidence, the court must assess whether

the statement was secured by government agents following constitutional and procedural

safeguards.

The determination of whether a suspect is in custody demands that the trier utilizes an

objective standard. *See* United States v. Masse, 816 F.2d 805, 809 & n. 5 (1st Cir. 1987). Until

an officer acts to exert some type of restraint a suspect cannot reasonably believe his freedom

is restrained. United States v. McDowell, 918 F.2d 1004, 1008 (1st Cir. 1990). A seizure occurs

"only if, in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave". United States v. Mendenhall, 446 U.S. 544, 554,

100 S.Ct. 1870, 1877 (1980); McDowell, 918 F.2d at 1008.

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 14

From the facts developed through the witnesses' testimonies and the totality of the circumstances analysis, this Magistrate Judge considers that defendant Carrasquillo was under custody after he was arrested by the state police on November 23, 2005.  Nonetheless, it is undisputed that on November 23, 2005, defendant exercised his right to remain silent by asking for an attorney and defendant was not interviewed by the federal agents.  Thus, the alleged interview on November 23, 2005 is a none issue.  The main suppression issue before our consideration is the interview of December 1, 2005 when defendant was transferred to federal custody after the FBI agents went to the state institution in Bayamón, arrested defendant, transported him to the federal building and interviewed him.[4]

Defendant avers the statements to be suppressed were obtained while under the custody of the FBI agents on December 1, 2005 in which defendant made some statements, signed a waiver form and made a hand written statement.  Defendant avers that, while being transported to the federal building on December 1, 2005, he requested an attorney and the government agents did not honor his request for counsel.  As such, the statements should be suppressed. [5]

a.    Miranda Warnings in General.

The provision of warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), although not totally dispositive, is  an "important factor," as are "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and,

---

[4] The suppression of involuntary statements is not required unless the person was "under arrest or other detention" at the time he made the statement. 18 U.S.C. § 3501(d).  United States v. Guerrero 114 F.3d 332, 339 (1st Cir. 1997).

[5]  A statement made after effective *Miranda* warnings are provided may not be admissible if it is the fruit of an inadmissible prior statement. *See* Brown v. Illinois, 422 U.S. 590, 605, 95 S.Ct. 2254, 2262 (1975).

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 15

particularly, the purpose and flagrancy of the official misconduct."   Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62 (1975).  As such, circumstances attending to statements provided by a defendant while holding a rifle over him while he was still handcuffed, were considered to be one at the breachway and led the trial court to suppress the statements as involuntary.  Still, the court also ruled that law enforcement actions of removing him to the station, rereading him his Miranda rights, and then questioning him later that same evening in an atmosphere when he appeared to be relaxed, fully composed, and in an open cell, would not render the statements coercive or otherwise inadmissible. United States v. Ayres, 725 F.2d 806, 810 (1st Cir. 1984).

In Miranda, the Supreme Court stated that 'prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

In Miranda, the Supreme Court further held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Unless the government shows that the proper warnings and waiver were given, any statements made by the accused are inadmissible in evidence, unless a defendant is shown to have waived his rights under Miranda which "is made voluntarily, knowingly and intelligently." Miranda, 384 US at 444. Consequently, a statement obtained by

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 16

government agents as a result of custodial interrogation must be suppressed unless the government can demonstrate that the defendant was properly advised of his rights and that he voluntarily, knowingly and intelligently waived those rights. United States v. Palmer, 203 F.3d 55, 60  (1st Cir. 2000).

Miranda warnings need not follow any particular format, so as to avoid a ritualistic formalism requirement, as long as the substance of the rights involved is adequately conveyed. California v. Prysock, 451 U.S. 1301, 101 S.Ct. 1773 (1981).  Even an unsigned statement goes to its weight and credibility not to its admissibility when it is proven that the defendant understood and adopted the substance of such statement.  Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1963).

For a Miranda waiver to be knowing and intelligent, it must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986). However, the suspect need not "know and understand every possible consequence of a waiver of the 5th Amendment privilege." Colorado v. Spring, 479 U.S. 564, 574 (1987). Rather, he need only be aware that "he may choose not to talk to law enforcement officers, and to talk only with counsel present, or to discontinue talking at any time." Id.[6] In adhering to said legal principles, a statement is not considered involuntary unless it is procured by police coercion or trickery.  Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, (1986), *accord*, United

---

[6] The content of Exhibit 1, which need not be officially translated precisely because one of the issues on knowledge and voluntariness is that it was presented to the defendant in the Spanish language, the one that he can fully understand orally and in writing, clearly fulfills *Miranda* requisites.  In any event, see footnote 1.

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 17

States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998); United States v. Santos, 131 F.3d 16, 19 (1st Cir. 1997).

Whether defendant has validly waived his rights is a question to be determined by examining the totality of the circumstances in which said statement was procured and given. Failure to warn a defendant of his rights is, when combined with police coercion, is deemed significant to a finding of involuntariness.  Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485 (1971).

When challenged statements are made by a defendant after arrest, "the degree of free will exercised by the defendant is not irrelevant in determining the extent to which the basic purpose of the exclusionary rule will be advanced by its application." United States v. Ceccolini, 435 U.S. 268,  276, 98 S.Ct. 1054 (1978) (*citing* Wong Sun, 371 U.S. at 491). After receipt of the Miranda warnings, a defendant's "choice whether to exercise his privilege to remain silent should ordinarily be viewed as an act of free will." United States v. Esquilín, 208 F.3d 315, 319 (1st Cir. 2000) (*quoting* Oregon v. Elstad, 470 U.S. 298, 310-11, 105 S.Ct. 1285 (1985)); United States v. Paradis, 351 F.3d 21, 34 (1st Cir. 2003).  "The Supreme Court has confined the voluntariness concept by holding that only [statements] procured by coercive official tactics should be excluded as involuntary." Byram, 145 F.3d at 407 (*citing* Connelly, 479 U.S. at 167).

In recent years, the Supreme Court has confined the voluntariness concept by holding that only confessions procured by coercive official tactics should be excluded as involuntary. Connelly, 479 U.S. at 167. *See* United States v. Santos, 131 F.3d 16, 19 (1st Cir. 1997). "Free

choice" is no longer a touchstone and the Supreme Court ruled in <u>Connelly</u> that a volunteered confession was admissible even if the product of a psychosis that undermined the suspect's ability to make a free and rational choice. *See* <u>Byram</u>, 145 F.3d at 407-408.

As such, the voluntariness of a statement would depend on whether the will of the defendant was overborne to consider that the statement was not his free and voluntary act. This is to be resolved in light of the totality of the circumstances. <u>United States v. Jackson</u>, 918 F.2d 236, 241 (1st Cir.1990). *See* <u>United States v. Marenghi</u>, 109 F.3d 28, 33 (1st Cir. 1997).[7]

      b.    <u>Application to this Case</u>.

We first note that defendant Carrasquillo's testimony evolves around his assertion that, while being transported to the federal building on December 1, 2005, he requested an attorney and the federal agents disregarded his request by stating to him that it was too late to get an attorney. The law enforcement agent's testimony and the documentary evidence presented are considered more believable than defendant's self-serving version. As such, defendant's grounds seeking suppression seem to rest solely on questions of credibility at the suppression hearing. However, the assessment of the evidence presented at the suppression hearing before this Magistrate Judge rests also on historical facts, reasonable conclusions from the evidence admitted, in addition to the credibility afforded to law enforcement agent's testimony and the documentary evidence.

---

[7] Jury may still assess relevant evidence on the issue of voluntariness under the circumstances. *See* <u>United States v. Fera</u>, 616 F.2d 590, 594 (1st Cir. 1980); <u>United States v. Cowden</u>, 545 F.2d 257 (1st Cir. 1976).

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 19

After evaluating the testimonies of SA Torres and defendant, including their responsiveness and their demeanor on the stand, this Magistrate Judge finds, pursuant to the preponderance of the evidence and considering the totality of the circumstances, the account of SA Torres[8] to be more credible and accords little weight to defendant Carrasquillo's testimony under these circumstances.[9]    Thus, this Magistrate Judge finds defendant Carrasquillo challenged statements were voluntarily made on December 1, 2005, after having been advised of his Miranda warnings and having knowingly signed the proper waiver (Exhibit 4).

This Magistrate Judge finds defendant Carrasquillo was advised of his constitutional rights in accordance with Miranda, 384 U.S. 436, while under the custody of the federal agents on December 1, 2005 prior to his interview, and any post-arrest statements were voluntarily produced after having knowledge and understanding of his rights, as testified by SA Torres and the documentary evidence presented.

Nonetheless, defendant conveniently avers that he did not knowingly waive his rights and the right to counsel thereafter before being interviewed by the federal agents upon arrival to the federal building on December 1, 2005 and his confession is not admissible.  We find defendant's argument is belied by the record and defendant's own actions on November 23, 2005 and on December 1, 2005 which clearly show defendant was aware of his rights and voluntarily waived them before being interviewed on December 1, 2005.

---

[8] No efforts were made by defense counsel to properly impeach the testimony of SA Torres.

[9] The findings of the court after a hearing on a pretrial motion to suppress are binding unless they are clearly erroneous. United States v. de Jesús-Ríos, 990 F.2d 672, 677 (1st Cir.1993). United States v. Hernández-Rodríguez, 443 F.3d 138 (1st Cir. 2006) (credibility determinations in a report and recommendation should not be rejected by the Court without hearing the evidence examined by the Magistrate Judge).

First, even though defendant claims not to recall whether he was advised of his rights on November 23, 2005, he was properly advised pursuant to the testimony of SA Torres in which he explained defendant was advised of his rights before an attempt was made to interview him on that first occasion.  SA Torres testified it is common practice for FBI agents to advise persons of their constitutional rights before they are interviewed.  Moreover, the testimony of SA Torres is corroborated by Exhibit 2 which is the FBI FD-395.15 form which is the Spanish version notification of rights.  Nonetheless, defendant refused to sign the waiver form and he invoked his right to an attorney present before answering questions as shown on Exhibit 2.  As corroborated by defendant's own testimony, the federal agents honored his request and he was not interviewed on November 23, 2005.  The fact that on November 23, 2005, defendant exercised his right not to be interviewed without an attorney demonstrates defendant Carrasquillo understood his right to have an attorney at the time.

Second, the undisputed facts that defendant previously invoked his right to have an attorney present on November 23, 2005, that the federal agents (including SA Torres) honored his request at that time, that defendant refused to be interviewed without the presence of an attorney and refused to sign the advise and waiver of rights (Exhibit 2) militates against defendant's assertion that he did not voluntarily waived his rights on December 1, 2005, that he requested an attorney and the agents (including SA Torres) did not honor his request.  To this effect, defendant avers that on December 1, 2005, while defendant was on the vehicle being transported to the federal building, he allegedly invoked his right to an attorney and the federal agents did not honor his request and told him it was too late to have an attorney and

he believed said statement.  We give no credibility to this self-serving assertion of defendant. SA Torres testified defendant did not request an attorney while he was transported to the federal building.  In fact, SA Torres testified that neither him nor SA Cabral engaged in conversation with defendant and only explained to him the booking process because defendant asked what the process was.  Thus, defendant initiated the conversation with the agents by asking what the process was.  SA Torres indicated defendant apologized and SAs Torres and Cabral both told him to remain silent and he was going to have an opportunity to talk at the FBI Office. Furthermore, the evidence shows that on December 1, 2005, neither SA Torres nor SA Cabral said anything to defendant to discourage him from invoking his right to counsel.  Why would the federal agents honor defendant's request to an attorney on November 23, 2005 and not honor his same request on December 1, 2005?  No reasonable explanation or motive has been provided for the agents to have acted differently, and contrary to common FBI practice, on December 1, 2005.

Third, the evidence shows defendant was indeed advised of his rights on December 1, 2005 before being interviewed as evidenced by the testimony of SA Torres and Exhibit 4. Defendant Carrasquillo signed an advise of rights and waiver form in Spanish on December 1, 2005.   See Exhibit 4.  Defendant was verbally advised of his rights in Spanish by SA Cabral and defendant choose not to read the form but he admitted he initialed every paragraph of the form and voluntarily signed the waiver (Exhibit 4). Thus, defendant Carrasquillo knew his rights when he was orally advised of same and after reading them to him in Spanish and having

understood a written admonishment and waiver of rights in the Spanish language.  Exhibit 4.
Defendant further admitted he knows how to read and write.

Moreover, the fact that defendant did initial and sign the waiver form on December 1,
2005 (Exhibit 4), contrary to his actions on November 23, 2005 when he refused to sign the
same form and refused to be interviewed without an attorney (Exhibit 2), demonstrates
defendant was well aware of his rights and voluntarily and knowingly waived them on
December 1, 2005 prior to being interviewed.

Fourth, defendant admitted being familiar with police procedures because he had a prior
criminal record.  That is the reason why, even if defendant was not advised of his rights as he
claims, he knew he had the right to an attorney before being interviewed.

Fifth, defendant testified he was not threatened or coerced by the FBI agents.  This is
consistent with the testimony of SA Torres who indicated that neither himself nor SA Cabral said
anything to defendant to discourage him from invoking his right to counsel.  Moreover, SA
Torres testified that no promises or threats were made by the agents to defendant during the
interview.  The evidence also shows defendant was not under the influence of any drugs or
alcohol.  Defendant was offered water and bathroom breaks during the interview.  In addition,
defendant has not argued that he lacked the mental capacity to understand his rights and the
evidence shows defendant Carrasquillo displayed the required mental capacity.  As such, there
is no issue of voluntariness or coercion to elucidate and the credibility as to whether the
statements were or not made would rest on the trier of fact.  *See*  United States v. Tibolt, 72

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 23

F.3d 965, 972 (1st Cir. 1995)(noting that factual findings and credibility determinations relating

to suppression issues are normally for the trier of fact).

Accordingly, we conclude that any oral statements and the written statement provided

by defendant Carrasquillo (Exhibit 5) on December 1, 2005, were voluntarily made and after

properly waiving his rights.[10]

Finally, even if we were to award credibility to defendant's assertion that he requested

an attorney on December 1, 2005 and the agents failed to honor his request, we would reach

the same conclusion.  Even if defendant requested an attorney while being transported to the

federal building, it is undisputed that it was defendant who initiated the conversation thereafter

with the federal agents. Defendant apologized to SA Torres and expressed regret for not

speaking to the agents previously and stated he wanted to talk to them about what happened.

SA Torres advised defendant to remain silent until they arrived at the FBI office. Upon arriving

at the FBI office, defendant was advised of his constitutional rights by SA Cabral who made sure

defendant understood his rights and initialed each paragraph of the advise and waiver of rights

form.  Defendant signed the waiver of rights form. Then, defendant's interview was held in the

presence of SAs Torres and Cabral and defendant provided a confession regarding the

commission of the crime.  Thus, defendant voluntarily waived his right on December 1, 2005

and the interrogation was permissible.  See Edwards v. Arizona, 451 U.S. 477, 484-86, 101

S.Ct. 1880, 1884-86 (1981) (holding that once a defendant has asked for an attorney, he is not

---

[10]The defense was provided with a 302 form for the interview of December 1, 2005 before the evidentiary hearing started.  Thus, defendant's assertions and grounds for suppression in the Motion to Suppress for the alleged lack of a 302 form for the interview of December 1, 2005 are baseless.  (Docket No.28).

United States of America v. Adalberto Carrasquillo-Carmona
Criminal No. 05- 425 (JAG)
Report and Recommendation
Page 24

subject to further interrogation by the police until after counsel has been made available unless defendant initiates further communication with the authorities); United States v. Cleveland, 106 F.3d 1056, 1064 (1st Cir. 1997) (interrogation permissible despite prior invocation of right to counsel because suspect initiated conversation and signed written waiver of Miranda rights.).

After observing the demeanor of SA Torres and defendant on the stand, after considering their testimonies as a whole, this Magistrate Judge gives little credibility to defendant Carrasquillo self-serving statement that the agents interviewed him without honoring his request to have an attorney present.  Defendant Carrasquillo had the opportunity to impeach the agents, present other evidence on his behalf, challenge the government's evidence and he failed to properly do so.  As such, defendant Carrasquillo has not effectively rebutted the evidence presented by the government at the suppression hearing before this Magistrate Judge which shows defendant's interview and confession was obtained after defendant Carrasquillo voluntarily waived his Miranda rights, and thus, his statements were voluntary and not in violation of his Fifth Amendment rights.

## CONCLUSION

Based on the documentary evidence and the witnesses' testimonies at the evidentiary hearing and having assessed their credibility, it is determined that, pursuant to the preponderance of the evidence and considering the totality of the circumstances, defendant's statements were knowing and voluntary, and thus consonant with their admissibility under the above findings and applicable law. Thus, it is recommended that the Motion to Suppress Statements (Docket No. 28) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 18th day of December of 2006.


         s/CAMILLE L. VELEZ-RIVE
         CAMILLE L. VELEZ-RIVE
         UNITED STATES MAGISTRATE JUDGE