IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>ALBERTO CARRASQUILLO-CARMONA,<br><br>**Defendant** | **CRIMINAL NO.** 05-425(JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Pending before the Court is Alberto Carrasquillo-Carmona's ("Defendant") Motion to Suppress Statements. (Docket No. 28). For the reasons set forth below, the Court **DENIES** the Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 21, 2005, Special Agent Miguel Torres ("SA Torres") of the Federal Bureau of Investigations ("FBI"), responded when Justo Pérez-García (the "victim") came to the FBI office in San Juan and filed a formal complaint about a car jacking. The victim was interviewed and the investigation of the carjacking started.

On November 23, 2005, Carolina Police Officer Eric Estrada called SA Torres to inform him that Defendant had been arrested and was being held at the Puerto Rico Police Department Headquarters in Carolina ("Carolina PRPD"). SA Torres and Special Agent Paul Wright

Criminal No. 05-425(JAG)                                                 2

("SA Wright"), went to the Carolina PRPD in an attempt to interview defendant. However, once they arrived they advised Defendant of his Miranda rights and he invoked his right to an attorney. The agents left without interviewing the Defendant.

After the federal agents left the Carolina PRPD, they continued to work on the case with the Assistant United States Attorney in charge. A complaint was filed with the corresponding affidavit. (Docket No. 1). An arrest warrant was also issued. Defendant was arrested by state police officers and transported to the Bayamón state jail. On December 1 2005, the federal arrest warrant was executed and Defendant's custody was transferred to the FBI. SA Torres and Special Agent Ed Cabral ("SA Cabral") performed Defendant's arrest and transfer to the FBI for processing. Defendant was handcuffed and transported in an FBI vehicle from the Bayamón state prison to the FBI office at the Federal Building.

Upon arrival at the FBI office, Defendant was read his constitutional rights in Spanish. Defendant initialed each paragraph of the advise and waiver of rights form and signed it. Also, an interview was held in the presence of SAs Torres and Cabral.

During the interview, Defendant told the agents what had happened on November 13, 2005. Defendant admitted that he had been drinking vodka with the victim. After a while, the victim agreed to give Defendant a ride but the victim told Defendant that he had to

Criminal No. 05-425(JAG)                                                    3

stop at the business of his son. They stopped there and continued to drink alcohol. Later on, they drove to Defendant's neighborhood, known as Caruso Philippines. Upon arrival, Defendant hit the victim with his elbow and continued to beat the victim trying to get him out of the vehicle. Defendant admitted that after hitting the victim with his elbow, he exited the vehicle and walked around the car, opened the door next to the seat where the victim was sitting, used a lug nut wrench to force the victim out of the car, and slammed the victim's head into the car door frame.

By then, the victim was outside his car and Defendant jumped into the car and fled. After traveling a short distance, Defendant wrecked the car against a church known as "La Roga." He then entered a bar and met two individuals, whose names are "Papolo" and "Pedro Nieves." Defendant told these individuals about the carjacking and they requested the keys to the vehicle, threatening to kill Defendant if he did not do so. Defendant handed them the keys of the victim's vehicle and they left in the vehicle.

Defendant was not under the influence of any drugs or alcohol while he was interviewed. Once Defendant was read his Miranda rights, he began to speak to the agents. The agents made no promises or threats to Defendant during the interview. Defendant also wrote a statement regarding the events that took place on November 13, 2005, to wit, a written confession regarding the commission of the offense.

On August 23, 2006, Defendant filed a Motion to Suppress Statements claiming that his post-arrest statements were involuntary, without a knowing and intelligent waiver of his constitutional rights. In said Motion, Defendant also claims that in the car trip from the Bayamón state prison, he requested an attorney. According to Defendant, the federal agents did not honor his request for counsel. As such, Defendant contends that the statements he made at the FBI office should be suppressed.(Docket No. 28). The government opposed Defendant's motion claiming that in the car trip from the Bayamón state prison, Defendant initiated conversation with the agents and that he knowingly and intelligently waived his Fifth Amendment rights when he signed the waiver form at the FBI office. (Docket No. 34).

The matter was referred to Magistrate Judge Camille L. Velez-Rive. On November 2, 2006, the Magistrate Judge held an evidentiary suppression hearing where the testimonies of SA Torres and Defendant were presented. Defendant testified that on December 1, 2005, the federal agents picked him up at the Bayamón state prison and that before going into the vehicle, the agents did not speak to him. However, according to Defendant, once they were on their way to the FBI office, the agents told him they were going to interview him. Defendant asked the agents about the legal process in the Federal Court. The agents told Defendant that the legal process was a long one and that he could end up in prison outside of Puerto

Criminal No. 05-425(JAG)                                                5

Rico. Then, according to Defendant, he asked for an attorney to which the agents replied that because of the time of the day, it was not possible to get an attorney for him. Defendant testified that the agents kept talking to him about the case after he requested an attorney. Afterwards, the agents asked him to write a written statement and he was fingerprinted. Upon arrival at the federal building, Defendant did not request anything because he was told it was too late. Defendant testified that his written confession contained statements that were not true and that he lied about them to get out of trouble. Specifically, Defendant denied that he hit the victim with his elbow and a lug nut wrench and that he had stolen the vehicle.

　　According to SA Torres's testimony, during the car trip to the FBI office, the federal agents did not initiate conversation with Defendant. Instead, Defendant asked the agents what was going on. The agents explained to Defendant that he was going to be taken to the FBI office in San Juan for processing, which included the reading of his rights and fingerprinting. Defendant apologized to the agents for not speaking to them earlier and stated that he wanted to talk to them about what happened. SA Torres advised Defendant to remain silent until they arrived at the FBI office. According to SA Torres, Defendant did not request an attorney while he was transported to the FBI building. After a fifteen-minute ride, Defendant and the federal agents arrived at the FBI office.

Upon arrival, Defendant was read his constitutional rights in Spanish by SA Cabral. According to SA Torres, SA Cabral made sure Defendant understood his rights. SA Torres testified that afterwards, Defendant explained and confessed to the carjacking that occurred on November 13, 2006 and that he wrote a written confession.

The Magistrate-Judge determined that Defendant's ground for suppression rested solely on the credibility of his testimony. After the hearing, the Magistrate-Judge concluded that the federal agent's testimony and the documentary evidence available was more credible than Defendant's "self-serving version." The Magistrate Judge accorded little weight to Defendant's testimony and determined that the statements made on December 1, 2005 were voluntary. Moreover, the Magistrate-Judge concluded that the Defendant was properly advised of his constitutional rights and knowingly signed the proper waiver. Accordingly, the Magistrate-Judge recommended in her Report and Recommendation that Defendant's Motion to Suppress be denied (Docket No. 47). On December 21, 2006, Defendant objected to the Report and Recommendation in its entirety. (Docket No. 48).

**STANDARD OF REVIEW**

1) <u>Standard for Reviewing a Magistrate-Judge's Report and Recommendation</u>

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b);

Criminal No. 05-425(JAG)                                                    7

and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." United States of America v. Mercado Pagan, 286 F.Supp.2d 231, 233 (D.P.R. 2003) (quoting 28 U.S.C. §§ 636(b)(1)). If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Rivera-De-Leon v. Maxon Eng'g Servs., 283 F. Supp. 2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections," the district court can assume that they have agreed to the magistrate's recommendation'." Alamo Rodriguez, 286 F.Supp.2d at 146 (quoting Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985).

**DISCUSSION**

Defendant avers in his "Objection to Magistrate Judge's Report and Recommendation" that his statements were obtained (1) during custodial interrogation; (2) in violation of his right to counsel; that (3) the Court made clearly erroneous determinations of

Criminal No. 05-425(JAG)                                              8

credibility and (4) the government has not met its burden of proving a valid waiver. As such, Defendant requests that this Court suppress Defendant's statements or in the alternative, grant a <u>de novo</u> suppression hearing. This Court is not persuaded by Defendant's contentions.

Once again, Defendant's sole ground for suppression rests on the credibility of his testimony given at the evidentiary hearing held before Magistrate-Judge Camille L. Velez-Rive. After the hearing, the Magistrate-Judge, based on the available documentary evidence and the testimony given by SA Torres, concluded that: (1) the Defendant was not interrogated in the car ride to the FBI office; (2) the Defendant did not request counsel; and (3) the Defendant was advised of his constitutional rights and signed the proper waiver form. Basically, the Magistrate-Judge determined that SA Torres's testimony was credible and that the Defendant's testimony was self serving and not believable.

It is well settled law that when findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings; "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 575 (1985); <u>see also</u> <u>Wainwright v. Witt</u>, 469 U.S. 412 (1985); <u>United States v. Henderson</u>, 463 F.3d 27, 32 (1st Cir. 2006).

However, a trial judge may not insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. <u>Anderson</u>, 470 U.S. at 575. When documents or objective evidence contradict the witness' story; or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. <u>Id.</u>; <u>see also</u> <u>United States v. Forbes</u>, 181 F.3d 1, 7-8 (1st Cir. 1999) (vacating after clear error was found in factual findings based on a police officer's testimony as to a vehicle stop, where the officer's testimony was "improbable" and "call[ed] into question" by "extrinsic evidence," and the district court "did not explain why it found [the police officer] to be credible").

Basically, a trial court's factual findings after a suppression hearing can be overturned only if, after reviewing all of the evidence, there is a "definite and firm conviction that a mistake has been committed." <u>Henderson</u>, 463 F.3d at 32. But such instances are rare, especially when the factual findings at issue are made by a careful and able judge. <u>Id.</u> When "a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic

Criminal No. 05-425(JAG)                                              10

evidence, that finding, if not internally inconsistent, can virtually never be clear error." <u>Anderson</u>, 470 U.S. at 575.

In the present case, the Magistrate Judge determined after evaluating the testimonies of SA Torres and Defendant, including their responsiveness and their demeanor on the stand that SA Torres testimony was more credible than that of the Defendant. In this case, the documentary evidence does not contradict SA Torres testimony, instead it supports it. Moreover, SA Torres story is consistent and plausible. Thus, there is no clear error in the determinations of the Magistrate Judge. Consequently, this Court will not over turn the Magistrate Judge's factual determinations in the suppression hearing. This Court holds that no interrogation took place in Defendant's police car ride to the FBI office; that Defendant did not request counsel; that Defendant did not request counsel; and that Defendant was advised of his constitutional rights and signed the proper waiver form. Consequently, the Magistrate Judge's Report and Recommendation is adopted in its entirety.

## CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** the Magistrate-Judge's Report and Recommendation, (Docket No. 71), in its entirety and **DENIES** Defendants' Motion to Suppress Statements. (Docket No. 28).

Criminal No. 05-425(JAG)                                                    11

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 14th day of March, 2007.


                                                                                       <u>S/Jay A. Garcia-Gregory</u>  
                                                                                       JAY A. GARCIA-GREGORY  
                                                                                       United States District Judge